FILED

# FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS
## UNDER U.S.C. § 2254

2016 MAR -7 PM 3: 13

MIDDLE ... DIST
ORLANDO. FL

NAME: Hector L. Torres

6:16-CV-386-ORL-40TBS

PRISON NUMBER: X20264

NAME OF PLACE OF CONFINEMENT:   Holmes Correctional Institution

ADDRESS OF PLACE OF CONFINEMENT: 3142 Thomas Drive, Bonifay, Florida  32425

### UNITED STATES DISTRICT COURT – MIDDLE DISTRICT OF FLORIDA

Orlando Division

**CASE NO.** _____ To be assigned by Clerk)  _____

____Hector L.Torres_____,
**PETITIONER**
(FULL NAME)          (INCLUDE NAME UNDER WHICH YOU WERE CONVICTED)

**VS.**

____Julie Jones, Secretary, Florida Department of Corrections, et al._____, **RESPONDENT**
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER)

**AND THE ATTORNEY GENERAL OF THE STATE OF FLORIDA,** ___Pamela Joe Bondi_____
_____, **ADDITIONAL**

**RESPONDENT.**

(If the petitioner is attacking a judgment, which imposed a sentence to be served in the *future*, petitioner must fill in the name of the state where the judgment was entered.  If petitioner has a sentence to be served in the *future* under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)

3

# PETITION

1.  Name and location of court which entered the judgment of conviction under attack:

    (a) Ninth Judicial Circuit in and for Orange County, Florida

    (b) Criminal Docket Number 2009-CF-016434-A

2.  Date of judgment of conviction:  July 1, 2009

3.  Length of sentence:  15 years as to count (1) and as to counts 2, 4, 51 days credit time served.

4.  Sentencing judge:  Honorable Bob Watties

5.  Nature of offense or offenses for which you were convicted: Count I – Attempted Carjacking Count II- Battery and Count IV Lesser Included of Robbery- Petit Theft.

6.  What was your plea?  (Check one)
    (a) Not guilty         ( ✓ )
    (b) Guilty             (   )
    (c) Nolo contendere    (   )

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
    N/A

7.  Kind of trial: Jury

8.  Did you testify at the trial?   No

9.  Did you appeal from the judgment of the conviction?      Yes

10. If you did appeal, answer the following:

    (a) Name of Court  Florida's Fifth District Court of Appeal – Case No.: 5D09-3100

    (b) Result    *Per Curiam* Affirmed

    (c) Date of Result     November 2, 2010; Mandate issued

        (d) Citation of case    *Torres v. State 49 so.3d 261* (Fla. 5th DCA 2010)

4

11.   State *concisely* every ground on which you claim you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.

   CAUTION:   In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief.  If you fail to set forth all such grounds in this petition, you may be barred from presenting them later.

   For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them.  However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

   If you select one or more of these grounds for relief, you must allege facts in support of the grounds or grounds, which you choose.  Do not check any of the grounds listed below.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

   (a)   Conviction obtained by a plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequence of the plea.

   (b)   Conviction obtained by use of coerced confession.

   (c)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

   (d)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

   (e)   Conviction obtained by violation of the privilege against self-incrimination.

   (f)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

   (g)   Conviction obtained by the violation of the protection against double jeopardy.

   (h)   Conviction obtained by action of a grand or petit jury, which was unconstitutionally selected and impaneled.

   (i)   Denial of effective assistance of counsel.

   (j)   Denial of right of appeal.

**A.** **Ground one:** <u>DEPRIVATION OF RIGHTS AS SECURED BY THE SIXTH AND FOURTEENTH</u> <u>AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH INEFFECTIVE ASSISTANCE OF</u> <u>COUNSEL BY COUNSEL'S FAILURE TO CALL EXCULPATORY WITNESSES TO PRESENT DEFENSE.</u>

**Supporting FACTS** (tell your story *briefly* without citing cases or law): <u>Petitioner, within his motion</u> <u>for post-conviction relief filed in the Ninth Judicial Circuit, Orange County, Florida, alleged that</u> <u>counsel was ineffective for failing to call Eunice Torres, his wife, and Vanessa Nieves, his sister-in-</u> <u>law, as exculpatory witnesses. Such a claim requires the defendant to meet four requirements: 1. The</u> <u>identity of the prospective witness, 2. The substance of the witness' testimony, 3. An explanation as</u> <u>to how the substance of this evidence prejudice the outcome of the trial and 4. An assertion that the</u> <u>witness was available to testify.</u>

<u>In this claim, the Petitioner contended that on the morning of September 14, 2008 Hector Nieves</u> <u>was riding a motorcycle when a car passed and braked right in front of him, forcing him to stop. The</u> <u>motorcycle was titled in Mr. Nieves' mother's name that allegedly purchased it from the Defendant's</u> <u>wife Eunice Torres. The Defendant and Nieves are brother-in-laws, being that they married sisters.</u> <u>Nieves testified that Defendant got out of the car, ran up to him, and said, "Give me the motorcycle",</u> <u>and pushed him to the ground. Nieves also testified that the Defendant hit and punched him and bit a</u> <u>finger of the hand in which Nieves was holding the motorcycle key in. Another individual by the</u> <u>name of Seppe emerged from a separate car while the aforementioned was going on. Nieves testified</u> <u>the Defendant and Seppe both fought him until the key was removed from his hand.</u>

<u>A man named Michael Quick was riding in a tow truck when he saw the incident above taking</u> <u>place. As he approached the three individuals fighting, he heard the Defendant saying that was his</u> <u>bike. Notably, neither Nieves nor Quick saw the Defendant attempt to move the motorcycle before</u> <u>they left the scene. Moreover, there were other people in the car with the Defendant and Seppe .Those</u> <u>people were Eunice Torres and Vanessa Nieves.</u>

<u>Prior to trial, the Defendant placed the State on notice that Vanessa and Eunice would be</u> <u>witnesses for the defense. A deposition was taken of Eunice Torres wherein trial counsel was present.</u> <u>Ms. Torres provided testimony in that deposition that the motorcycle belonged to her and the</u> <u>Defendant she also forwarded copies of the Forged titles via fax to trial counsel. Notably, counsel was</u> <u>provided with this documentation and deposition testimony prior to trial.</u>

6

Defendant avers that trial counsel's failure to call Eunice Torres as a witness for the defense constitutes deficient performance. Counsel is charged with knowledge of the law and should have recognized that without explanation as to why the Defendant and Seppe were trying to retrieve the motorcycle, a juror could and would conceive a carjacking took place. Furthermore , since credibility was essential in the case, the fact that the signature of Eunice Torres are not consistent from the ones on document of purchase to the document showing the sale, the jury would have been given an alibi or defense to carjacking. The defense would have been ownership by fraud on behalf of Nieves and/or Janet Castro.

Counsel deficient performance prejudice the Defendant because Eunice Torres was obviously known to counsel, was present in the courtroom the entire trial and would have testified to the following:

She purchased the motorcycle in question on April 6, 2007 for the Defendant. Upon the Defendant being incarcerated on unrelated charges in April of 2007, her brother–in-law Hector Nieves offered to store the motorcycle at his residence so it could be protected from the weather while the Defendant was incarcerated. Ms. Torres did not have a place to store the motorcycle at the time to shelter it from the rain and the sun, so she agreed. Eunice also provided the title to the bike to Nieves based on the premise that it would be stored in his mother's safety deposit box where she worked. At no time did Ms. Torres ever agree or consider selling Nieves or anybody else the motorcycle. Ms Torres would have further testified that the signatures on the title and related document showing Janet Castro as the owner were forged. Ms. Torres was present that day in the courtroom with all the titles and related documentation alleged above, and specifically asked the Defendant's counsel to be called as a witness to testify.

Defendant avers that had counsel called Eunice Torres as a witness she would have testified to the aforementioned facts, introduced the titles into evidence and explained the chain of events above, the outcome of the trial would have resulted in a not guilty verdict on the carjacking. It is more than reasonable that the outcome of the proceeding would have been different had the jury heard the testimony based on the aforementioned facts and viewed the differences in Eunice Torres signatures.

Similarly, Vanessa Nieves was known to trial counsel, as a witness for the defense that was available to testify that day of trial, and would have attested that the motorcycle was provided with its

7

title to Hector Nieves based on the above mention facts. She would have also testified that Nieves mother Janet Castro had conspired with her son to forge the signature of Eunice Torres on the motorcycle title. Defendant avers that Vanessa Nieves' coupled with Eunice Torres' testimony and documentation, would have changed the outcome of the proceeding and resulted in an acquittal on the carjacking. Thus, counsel's failure to call her as a witness prejudiced the Defendant.

   In the totality of the circumstances, the jury was presented with two witnesses who testified they owned or was in possession of the motorcycle the day of the carjacking. Janet Castro testified she was the owner of the motorcycle, Hector Nieves testified he was driving it the day of the allege crime. Nieves also testified he was battered and the Defendant took the keys and helmet from him. Mr. Quick testified he witness a fight involving Nieves and two other men. Notably, neither Quick nor Nieves testified the Defendant attempted to move the bike. Notwithstanding, trial counsel did not call witness for the defense. Counsel admitted to a battery in closing argument, yet produced no witness or evidence to show why the battery or alleged carjacking took place.

   Wherefore, Defendant prays this Honorable Court hold an evidentiary hearing to ascertain why trial counsel failed to call Eunice Torres and Vanessa Nieves as witnesses based off what they would have testified to as alleged herein this ground, or grant any other relief this court deems proper.

   Upon raising the instant claim, the court granted the petitioner an evidentiary hearing. After the hearing, the Court, in denying this claim the Trial Court argued that:

   At the hearing, Defendant's trial counsel, Eric Barker, testified he has been a Criminal Defense Attorney for twenty-one years and has handle thousands of cases. Barker testified that he met with Defendant many times after his firm was hired to represent him. During these meetings, the possible defenses for the charged offenses were discussed. Defendant advised Barker he stopped on the side of the road to argue about a motorcycle with the victim. Hector Nieves, his brother-in-law and it got physical, but he never attempted to take the motorcycle or the helmet and was innocent of the attempted carjacking charge. Baker believed that this explanation made sense because Defendant had the opportunity to take the motorcycle because his wife Eunice Torres and the other individual present at the scene could have driven his vehicle and he could have taken the motorcycle and fled.

8

However, the facts indicate that when the Defendant left the scene he did not take the motorcycle, but instead left Hector Nieves with the motorcycle. Based on this information, Barker determine the best strategy at trial would be to show that Defendant did not have the intent to take the motorcycle, and that this was, if anything, a simple battery (i.e. family fight in the public) against his brother-in-law.

In Barker's experience, the strategy of conceding a reduced charge can be beneficial to a Defendant as it often takes the jury's focus off the more serious offenses, and in some instances can confuse the issues for the jury, often giving the jury " something minor to hang their hats on", if they are going to convict. Barker explained that often it could be a good strategy and increase the chances of the jury finding reasonable doubt on the higher offenses. Barker believed there was no defense to the battery and conceding it would benefit the Defendant and might lend him credibility with the jury.

Barker testified that Defendant agreed he battered Nieves and consented to concede guilt as to battery. Defendant never told Barker he attempted to take the motorcycle. In fact, Barker testified that the overall strategy was not to plea to the misdemeanor battery charge prior to trial, but to explain to the jury that the battery did occur be yond a reasonable doubt, however the Defendant did not attempted to take the motorcycle, commit a carjacking, or a robbery, which supported what Defendant had told Barker. Barker testified that Defendant told him he would be fine with a misdemeanor conviction. However, he was concerned with the felonies due to the enhanced sentencing, if convicted, but he wanted to go to trial.

During discussions prior to trial, Barker testified Defendant told him that the motorcycle was his, but he gave it to Hector Nieves for safekeeping while he was in DOC serving a sentence. Defendant claimed that once Hector had the motorcycle, he and Nieves' mother, Janet Castro, appropriated it to their own use by forging the title documents.

Barker testified that he advises his clients based on his evaluation of the case, but the direction of the case is ultimately their decision. Early on in his representation of Defendant, Barker filed a Defense Witness List, listing, Eunice Torres and Vanessa Nieves as witnesses. Barker testified he was possibly contemplating pursuing a claim of right defense and these two individuals would have been witnesses to that defense. Barker indicated that Eunice Torres would have testified that she never sold the motorcycle, but only gave it to Hector Nieves to hold until Defendant returned from DOC.

At some point, Barker explained he received titled documents for the motorcycle from Eunice Torres, but there was no definitive evidence as to the theory of forgery. Barker testified that the

evidence of forgery was speculative, and opinion testimony from a lay witness that the documents were forged would likely not have been admissible.

Additionally, Baker testified that using a claim of right defense would not be the best Strategy for the Defendant. Specifically, it would provided the jury a motivation on Defendant's part to stop his vehicle in the middle of the Street, confront Hector Nieves in order to attempt to take the motorcycle, and Defendant repeatedly claimed he never attempted to take the motorcycle. Barker acknowledge that Defendant would have a claim of right defense if he owned the motorcycle, but it was not the best defense to utilize at trial, however, he told him it was his choice to make. Barker was concerned that if they presented a claim of right or forgery defense and it was not properly established, they could not longer present a defense that Defendant did not attempt to take the motorcycle. Barker believed that telling the jury, we did it, but we had a right to, would not be sound trial strategy with these particular facts.

Baker explained that conflicting defenses, while permissible, can be confusing for the jury. Telling the jury, that Defendant was the rightful owner of the motorcycle and he had a right to take it, but that he did not try to take, it would be inconsistent defense and a jury generally will not take the defense seriously. Baker indicated the goal is not to appear disingenuous; and arguing inconsistent defenses would not lend credibility to the Defendant. Again, Barker expressed reasonable doubt existed because the facts made it unlikely Defendant attempted to carjack the motorcycle as it was broad day light and the parties were related to each other. Barker recalled that on cross-examination State witnesses Michael Quick and Hector Nieves never saw Defendant or the Co-Defendant attempted to get on the motorcycle, move it or attempted to drive it away. (TT 25, 44).

Barker testified that Eunice Torres was never going to testify because the claim of right defense was abandoned early on in the trial strategy discussions with Defendant. At the hearing, Eunice Torres, the Defendant's wife testified. Torres testified the motorcycle belonged to her and the Defendant, but she did not recall when the motorcycle was purchased. Torres explained she was still the owner of the motorcycle on the date of the offense and she had explained this to Baker. She testified she never spoke with Barker about testifying as a witness at trial, but she believed she was going to be a witness. Torres testified, she previously sent Barker a copy of the title paperwork and also brought the documents to court on the day of trial, but she did not give them to Baker.

Torres testified she attempted to be called as a witness by tapping Barker on the shoulder at trial. Torres believed she would testify to the differences in the signatures on the title document and that

she was the rightful owner of the motorcycle. Torres testified, she asked Hector Nieves and Vanessa Nieves, her sister to store the motorcycle. Torres testified, that within the four months after Defendant had been release from DOC, they attempted to retrieve the motorcycle one time. Torres did not posses any receipts or bill of sale to show ownership, other than the title. Additionally, Torres did not possess any proof of ownership for the helmet and she could not recall where or when, the helmet was purchased.

At the hearing, Defendant testified that he had discussed with Barker whether Eunice Torres would testify at trial and he provided title paperwork for the motorcycle. Defendant testified that Barker never explained to him that his claim of right defense would not be presented to the jury, and he only learned of this after the trial had started. From what Defendant recalled, Baker did not want to present that evidence to the jury, but he cannot recall whether the defense was going to be presented. Defendant testified he did not know Barker was not going to call Eunice Torres to testify, Barker called her name, she stood up to testify, and Barker told her to sit back down and that she was not going to testify.

A well-recognized way that a Defendant may raise reasonable doubt is to argue that pending criminal charges have influence a witness's cooperation with the State. To explore more subtle motivations, a defendant may cross-examine to bring out a witness's hope to obtain favorable treatment from State. Trial strategy often focuses on discrediting the opposition's witnesses.

In this case, the victim, Hector Nieves, was a convicted felon multiple times over. At the time of trial, Hector Nieves had six pending felonies for which he was awaiting sentencing. (TT 35). Additionally, Mr. Nieves testified he was hoping that the State and Law Enforcement would give him a lenient sentence on those felonies (TT 35). Barker testified at the hearing that frequently a witness can be cross-examined in such a way to undermine the State's case, and despite some evidence to the contrary, the defense is to make the best argument as possible to discredit them.

Defendant did not meet his burden at the evidentiary [sic] for this particular claim. Based on the testimony of the witnesses this Court finds the testimony of Barker to be more credible. Specifically, the Court believes Defendant agreed to the trial strategy utilized by Barker. The trial transcript is devoid of any statement by Barker that would show he ever called Eunice Torres to stand up and then told her to sit down because she was not going to testify.

In terms of strategy, Barker's closing argument explained to the jury exactly what they were trying to convey throughout the trial through cross-examination- a battery occurred and nothing else

(TT. 79-87). There was careful consideration on Barker's part not to provide the jury a motivation for Defendant to attempt to take the motorcycle. Further, any opinion testimony from the lay witnesses as to the authenticity of the title document would have been questionable and possibly inadmissible. Additionally, any contradictory testimonies of Janet Castro and Hector Nieves would have provided an inconsistent theory of defense. Defendant's Argument that "if only" Barker had pursued a claim of right defense, it would have produce a different outcome is pure speculation.

Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's Strategic decision. (A fair assessment of attorney performance requires that every effort be made to elimination the distorting effects of hindsight. Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternate courses have been considered and rejected and counsel's decision was reasonable under norms of professional conduct. If after consideration of the facts of a particular case and the relevant law, counsel makes a decision not to call a particular witness at trial; it is presumed to be reasonable and strategic and is virtually unchallengeable. A Defendant cannot rebut this presumption only by establishing that no competent counsel would have made the same decision. (A strategic decision is not a valid basis for an ineffective claim unless a defendant is able to show that no competent trial counsel would have utilized the tactics employed by trial counsel.'').

Based on the testimony and evidence presented at the evidentiary hearing and the written arguments submitted by both parties, this Court concludes Barker's actions in not calling Eunice Torres and Vanessa Nieves as witnesses was sound trial strategy under the circumstances and did not constitute deficient performance. Additionally, this Court finds Defendant was aware of and agreed to the defense strategy prior to trial. Furthermore, when questioned by the Trial Court as to his satisfaction with Barker's representation, Defendant, while under oath answered in the affirmative. (TT 91-92) Accordingly, Defendant is not entitled to any relief.

Petitioner appealed the Court's decision to the Fifth District Court of appeal. On Appeal, The Petitioner Argued:

The lower tribunal's findings are not supported by competent, substantial evidence. First, it is well settled that affirmative answers of satisfaction with counsel do not preclude a later claim of ineffective assistance of counsel *Scott v. State*, **779 So.2d 284 (Fla. 2d DCA 1998).**

Second, as far as comparing the signatures and handwriting on the title where Eunice Torres purchased the motorcycle from Tamara Cruz (R.131) versus the alleged forged title where Ms. Torres allegedly sold the bike to Janet Castro (R.133), Ms. Torres' testimony would have been sufficient to authenticate her own signature in trial, as she was certainly familiar with her own signature. *See, Buchanan v. State*, 575 So.2d 704 (Fla. 3d DCA 1991) (letter writer may authenticate his or her own signature and thereby prove the genuineness of writings); *Clark v. State*, 114 So.2d 197, 2013 (Fla. 1st DCA 1959) (lay witness can identify a person's handwriting if witness is sufficiently familiar with handwriting to form reliable opinion).

Being as this Court cannot substitute its opinion as to witness credibility; the only other consideration is whether Barker's strategy to abandon the claim-of-right defense through the testimony of Eunice Torres was sound trial strategy. Barker's flawed strategy would be sufficient to prevail on an ineffective assistance of counsel claim only if it was unreasonable under the norms of professional conduct and such a strategy that no competent trial counsel would have utilized. *State v. Bolender*, 503 So.2d 1247 (Fla.1987); *Windom v. State*, 886 So.2d 915 (Fla.2004); *Hyer v. State*, 462 So.2d 488, 489 (Fla. 2d DCA 1984) (noting that a jury "could have observed any differences in the signatures on its own" while upholding the denial of a witness to testify as to differences in signatures). The Appellant contends that Barker's strategy was exactly that flawed. Barker had at his disposal the means to prove a claim of right through the testimony of Eunice Torres. She would have been able to authenticate her own signature on the first title (R.131), and affirmatively testify that it was not her signature on the second (R.133). As the case law shows, her testimony and the evidence relating to it would have been wholly admissible and the question would have been left for the jury. Barker admitted that depositions established no evidence that the Appellant did not attempt to take the bike (EH.29) and that he never investigated into the title issue beyond listening to what the Appellant and Ms. Torres had to say (EH.30-31). Further, Barker admitted that claim-of-right would have been a complete defense. Despite the fact that Barker had the means to a complete defense at his hands through the testimony of Eunice Torres, Barker chose to pursue a defense that was misguided and contrary the evidence and depositions. In this, Barker's strategy was unreasonable in that he pursued a strategy that no competent counsel would have undertaken.

Considering the foregoing, the lower tribunal's reasoning is not supported by competent substantial evidence. This Court should reverse the denial and remand for a new trial.

Upon reviewing the above mentioned arguments the District Court of Appeal upheld the trial courts decision with an expressed per curium affirmed.   In the instant case the state courts decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

Under  28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the,"unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."   A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the instant case, the state court identified the correct governing legal principal from the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this honorable court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.

14

**Ground Two:** <u>DEPRIVATION OF RIGHTS AS SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO RESEARCH PREPARE, AND PROPERLY ARGUE THE JUDGMENT OF ACQUITTAL AND BY FAILING TO PROPERLY CONVEY WHAT CONSTITUES ATTEMPTED CARJACKING TO THE JURY IN CLOSING ARGUMENTS.</u>

**Supporting FACTS** (tell your story *briefly* without citing cases or law): <u>Petitioner, within his motion for post-conviction relief filed in the Ninth Judicial Circuit, Orange County, Florida, alleged that the defendant was charged with attempted carjacking, Robbery, Criminal Mischief, and Battery. The State's Theory in trial was that the robbery was based off the taking of the keys and motorcycle helmet. (T.70). The Attempted Carjacking was based off the defendant attempting to take a bike, by taking the keys(T.92) Criminal mischief was based off taking the helmet and throwing it out the window which in turn caused damage in the amount of $300 according to Hector Nieves.</u>

<u>To prove the crimes as alleged the State called Hector Nieves, Janet Castro (Nieves mother), Michael Quick and Deputy Christopher Gunn. In relevant part Janet Castro testified that she was Hector Nieves Mother, the motorcycle in question was titled in her name, and she provided a copy of the certificate of title to the State's Attorney's Office, which was tendered as an exhibit to the jury (T.51-53) Hector Nieves testified that the motorcycle belonged to his mother until he paid her the $8,000 back that she loaned him to purchase it from Eunice Torres (T.17-18). On the day of the incident, Nieves noticed a car get in front of him and hit the brakes. This caused him to hit his brakes and stop. The Defendant got out of the car that caused him to stop and told Nieves to give him the motorcycle. He pushed Nieves, which caused him to stop and told Nieves to give him the motorcycle. The push caused Nieves, and the motorcycle to fall sideways. While on the ground, the Defendant was trying to get keys. The Defendant was punching and biting Nieves finger while he was on the ground in attempted to get the key from him.</u>

<u>After a while Nieves pushed the Defendant off him, got away from him, at which point another person named Seppe came running towards him, and he, and the Defendant began to hit Nieves, They got the key from Nieves, threw his helmet out the window causing three hundred dollars worth of damage to it. Nieves stated that he never saw the Defendant or Seppe attempted to move the motorcycle (T.17-30). Michael Quick testified that his car broke down, and while riding in a tow truck he observed a person hitting someone on the ground trying to take his keys. (41-43). another car</u>

pulled up and he was trying to do the same thing. Both of the people hitting Nieves were yelling that's my bike at him. (T.44) The whole thing only went on for a minute or two, and then they pretty much left. (T.45) after they left, Nieves did not have the key. Notably, Quick testified they were pretty much settling it before we even really actually got up to em (T.45) Mr. Quick testified that he saw both men get in their separate car, neither one of them had a helmet, and therefore he did not see a helmet thrown out the window. (T.48)

Immediately thereafter, the jury was read the jury instructions for carjacking and attempt to commit the crime. In relevant part, the jury was read the following:

To prove the crime of attempted to commit carjacking, the State must prove the following two elements beyond a reasonable doubt:

One, Hector Luis Torres did some act toward committing the crime of carjacking that went beyond just thinking or talking about it.

Two, he would have committed the crime except that someone prevented him from committing the crime of carjacking, or he failed.

It is not an attempt to commit carjacking if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission under the circumstances indicating a complete and voluntary renunciation of his criminal purpose.

A review of the existing body of case law on carjacking shows the forcibly taking of a victim's keys can satisfy the taking element of the crime only if the intent to take the victim's automobile is proven. See Hayfield v State 40 So. 3d 905 (Fla.4th DCA 2010). ( holding " taking of car keys with the intent to take victim's automobile satisfies proof of carjacking); Culler v State 808 So.2d 201 (Fla. 2002) ( standing outside victim's automobile accomplice demanded his car keys and utilized keys to drive off with car).Brown v State 806 So.2d 576 ( Fla. 2nd DCA 2002) ( Brown enter trailer, demanded money and keys, after acquire them ran out door fled in victim's car); Baptiste-Jean v State,979 So.2d 1091( Fla. 3rd DCA 2008) ( car keys forcibly taken from victim during course of kidnapping and home invasion, before he used the keys to steal car located outside home).

The intent does not always require that assailant to take the car, his actions can justify the intent without a successful taking as long as proof of taking, or attempted taking is satisfied. **See, Price v State, 816 So.sd 738 ( Fla. 3rd DCA 2002)( Price took the keys but never actually drive away in the victim's car, the court held the forcible taking element of the keys was satisfied because price got in the vehicle but could not get it started) James v State, 745 So.2d 141 ( Fla. 1st DCA 1999)( Defendant entered car after taking of keys and attempted but was unable to start car in order to drive away).** Both of these cases were upheld on their demonstrated of intent and attempted, but failure to remove vehicles.

At bar, the record is void of any attempts to take the motorcycle after the defendant obtained the keys. In fact, Defendant avers the State failed to enter any evidence or inference that the Defendant failed to take the motorcycle because it couldn't be started, his plan failed or he had to leave because of resistance on behalf of the victim or any other party. The evidence, however does show the defendant was yelling at Mr. Quick that it was his bike, and Mr. Quick saw the Defendant and Seppe each leave and get in their respective cars to drive away. No evidence was entered showing they ran away because of any third party or because Nieves stopped them from taking the motorcycle after the keys were taken.

After the State rested, the Defendant moved for judgment of acquittal (T.58) Counsel asked for judgment of acquittal on all four counts. As to the attempted carjacking, counsel argued the following:

As far as attempted carjacking, both Mr. Quick and Mr. Nieves stated that they did not see anyone trying to actually physical removes the motorcycle...Mr. Hector Nieves was knocked off the motorcycle or had gone off the motorcycle, and that there was a fight. There is some testimony in terms of him trying to take the key, but there was no testimony [sic] either person, especially Mr. Torres tried to physical take the motorcycle he said, no, he didn't see it. Mr. Quick said the same thing.

The State argued that:

If the court were to read the jury instruction, it says basically , did some act that went beyond just thinking or talking about it in terms of the attempted taking of the vehicle. In this case, obviously ...

stopped in front of him, um started hitting him...biting his finger, trying to take the key...So I would argue that I have gone beyond just thinking or talking about it... I think it a factual question at this point for the jury to decide whether or not that was sufficient in terms of going beyond what's necessary for attempted taking. (T.59)

The trial court responded stating:

   Well, I think the second part of the instruction, he would have committed the crime expect someone prevented him from committed the crime of carjacking or he failed is somewhat, in my mind, the issue at this point; I would reserve ruling on Count 1...(59-60)

   The Defendant rested without calling a single witness; closing arguments were advanced, and just prior to the jury instruction being read the trial court ruled on the JOA it had reserved with the following:

   Therefore, the record is clear... We would deny the motion for judgment of acquittal. In addition, the court's reasoning on that, just for the record, is whether that the attempt to get the keys was an attempted to take the vehicle would be a jury determination of the case.  Think [sic] the State has proven by the testimony of Mr. Nieves, that there was and attempt to get the keys out of his hand..., and I think that could go to a jury question...Clearly, we don't have a car jacking. Recognizing that the jury could easily find... Mr. Torres not guilty of that count because there was and abandonment, but well let the jury decide. (92-93)

   Defendant Avers that trial counsel's failure to argue the aforementioned case law which was in existence prior to the defendant's trial prepare an argument off what constitutes an attempted, and properly argue it in a JOA constitutes deficient performance. Counsel is charged with knowledge of the law and how it applies to his client's case. Failure in this case to research, prepare and properly argue made counsel's representation equivalent to no counsel at all.

   Counsel's deficiencies prejudice the Defendant in JOA argument. Had counsel researched prepared, argued the existing body of law, and provided the aforementioned case law to the trial court

at the time of JOA, the trial court would have granted JOA on the attempted carjacking. This is evident since the State failed to show evidence that the alleged carjacking was altered for any reason other than his abandonment to commit the offense. In totality of the circumstance, the State failed to enter any proof that the Defendant took the key and attempted to take the motorcycle. Trial counsel presented an argument that neither Mr. Nieves nor Mr. Quick saw anyone try to physically remove the bike. This argument is not consistent with what would prove an attempt to carjacking. In fact, the Trial Court's denial of Count 1 in the JOA was premised off Whether or not the jury believes that an attempted to get the key was an attempted to take the vehicle..." Had counsel had knowledge of the aforementioned case law, showing the trial court that it takes more than just the taking of the key to justify an attempt, and argue that the State failed to enter any evidence to show that the Defendant didn't abandon his attempt voluntarily the trial court would have granted the JOA based on the evidence and the existing case law at the time of trial rather than submitting the case to the jury.

Moreover, counsel's failure to properly convey to the jury the argument that Defendant abandoned the carjacking voluntarily, and explain that State had the burden to show that the Defendant took the keys, *in attempted to take the motorcycle, but his plan failed* because of a reason other than his own choice to abandon the offense, constitutes deficient performance. Counsel is experienced and is charged with the knowledge of how to convey what is lacking in evidence to obtain an acquittal. Failure to explain in non-technical language that it was the States burden to prove the Defendant did some other act than take the keys to satisfy an attempted carjacking.

Counsel's deficiency prejudiced the Defendant by allowing the jury to evaluate what an attempted carjacking is, without explaining to them that under the law there has to be evidence that the defendant took the keys and did some act towards taking the motorcycle but failed. Without this explanation in closing argument the jury was left to decide case upon evidence that clearly showed defendant took the key while hitting Nieves and yelling that's my bike. A layperson has no knowledge of the law or existing case law. As such, in the case at bar the failure to explain, what abandonment was, and how this instruction applied to the facts of this case, rendered the judgment unreliable. Even the judge recognized the jury could easily find Torres not guilty of attempted car jacking because there was and abandonment. Yet, how can the jury decide if they were never informed of what abandonment was by trial counsel in relation to the law.

The trial court denied the above-mentioned claim without an evidentiary hearing. In denying the claim, the court argued:

In Claim Two (A) of his Amend Motion Defendant alleges ineffective assistance of counsel for failing to research, prepare, and properly argue for judgment of acquittal. As the State points out in its response, this issue was raised and full explored on direct appeal. (See Initial Brief of Appellant, Answer Brief of Appellee, attached).Claim raised on direct appeal cannot be re-litigated in a postconviction motion. **Wright v. State 650 So.2d 702 (5th DCA 1995); Remeta v. Dugger 622 So.2d 452,454 (Fla.1993). Proceedings under rule 3.850 are not to be used as a second appeal. State v. Bolender, 503 So.2d 1247 (Fla.1987) cert. denied, 484 U.S. 873(1987). It is inappropriate for a defendant to use a different argument to re-litigate the same issue, Medina v. State, 573 So.2d 293 (Fla. 1990) accordingly, this claim is procedurally barred.**

   In Claim Two (B) of his Amended motion, defendant alleges ineffective assistance of counsel for failing to properly articulate the elements of carjacking in closing argument. Defendant claims counsel failed to argue that he had abandoned the carjacking voluntary. This lacks merit.

   Counsel could have not have argued an abandonment theory as it would have been inconsistent with the trial strategy that the defendant never attempted to take the motorcycle and this was a family fight and noting more. The trial strategy of the defense was fully explored at the evidentiary hearing and found to be sound strategy in the analysis and denial of claim one of the defendant's Amended Motion. Accordingly, defendant is not entitled to any relief.

Petitioner appealed the above-mentioned summary denial to the Fifth district court of Appeal.

   On appeal, the petitioner argued:

   In ground two, Appellant alleged that trial counsel was ineffective in arguing for a judgment of acquittal. Appellant further alleged that counsel was ineffective in failing to properly convey to the jury during closing arguments what constitutes attempted carjacking.

   As to the first part of the claim, Appellant alleged that Florida case law holds that "the forcible taking of a victim's keys can satisfy the taking element of the crime only if the intent to take the

victim's automobile is proven," and cited case law in support of this argument (R.113). Appellant stated, "The record is void of any attempts to take the motorcycle after the keys were obtained by Defendant." (R.114) Appellant stated that there was no evidence that a plan to take the motorcycle failed or was aborted due to the appearance of a third party (R.114). Appellant stated that:

> "Counsel's deficiency prejudiced the Defendant in JOA argument because had counsel researched, prepared, and argued the existing body of law, and provided the aforementioned case law to the trial court at the time of the JOA, the trial court would have granted JOA on the attempted carjacking count. This is evident since the State failed to show evidence that Defendant's carjacking was altered for any reason other than his abandonment to commit the offense."

(R.115-116).

As to the second half of the claim, Appellant alleged that counsel's failure to properly convey the elements of attempted carjacking to the jury constituted deficient performance. The Appellant stated that counsel's specific omission was his "[f]ailure to explain in layman's terms that it was the State's burden to prove the Defendant did some other act than take the keys to satisfy an attempt to carjack." (R.116). Appellant stated that counsel's deficiency allowed the jury to evaluate what an attempted carjacking is rather than explaining to them that:

> "... Under the law there has to be evidence that Defendant took the keys, and did some act towards taking the motorcycle but failed. Without this explanation in closing argument the jury was left to decide cased upon evidence that clearly showed Defendant took the key, while hitting Nieves and yelling 'that's my bike.' A layperson has no knowledge of law or existing case law. As such ... the failure to explain what abandonment was, and how this instruction applied to the facts of this case, rendered the judgment unreliable."

(R.117).

The lower tribunal summarily denied the first half of the ground stating that the issue was "raised and fully explored on direct appeal," and thus was not able to be "re-litigated" via 3.850 (R.266). As to the second half, the trial court stated:

> "Defendant claims counsel failed to argue that he had abandoned the carjacking voluntarily. This claim lacks merit.
> Counsel could not have argued an abandonment theory as it would have been inconsistent with the trial strategy that Defendant never attempted to take the motorcycle and this was a family fight and nothing more. The trial strategy of the defense was fully explored at the evidentiary hearing and found to be sound trial

strategy in the analysis and denial of Claim One of Defendant's Amended Motion. Accordingly, Defendant is not entitled to any relief."

(R.266).

The trial court's record attachments do not conclusively refute the Appellant's claim. The issue raised on direct appeal is different from the first half of the claim. Point two of Appellant's direct appeal reads as follows:

> "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL OF ATTEMPTED CARJACKING WHERE THE EVIDENCE DID NOT ESTABLISH AN ATTEMPT TO TAKE THE MOTOR VEHICLE"

(R.289). this issue is clearly distinguishable and different from counsel's failure to properly argue for a judgment of acquittal.

Generally, a claim of ineffective assistance of counsel may not be raised on direct appeal. *Bruno v. State*, 807 So.2d 55 (Fla.2001). The only exception to this general rule is when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable. *Stewart v. State*, 420 So.2d 862 (Fla.1982).

In *Corzo v. State*, 806 So.2d 642 (Fla. 2d DCA 2002), a similar issue was addressed, wherein the defendant raised an issue on direct appeal stating that his lawyer "engaged in childish behavior, courtroom antics, and conduct designed to antagonize the trial judge." *Id.* at 643. Appellate counsel stated that counsel's actions were so unprofessional as to warrant a new trial. *Id.* Corzo's case was per curiam affirmed without opinion. Corzo later raised a claim of ineffective assistance of counsel alleging "a long list of statements and actions by his counsel that do seem quite unprofessional." *Id.* The motion was denied as procedurally barred due to Corzo raising the issue on direct appeal. Corzo appealed, and the Second District stated as follows in pertinent part:

> "We can understand the trial court's confusion concerning whether Mr. Corzo's claim for ineffective assistance of counsel was procedurally barred. There are many precedents holding that a motion pursuant to rule 3.850 may not raise issues that were or could have been raised on direct appeal. See, e.g., *Robinson v. State*, 707 So.2d 688, 698 (Fla.1998); *Medina v. State*, 573 So.2d 293, 295 (Fla.1990); *State v. Waters*, 718 So.2d 225, 226 (Fla. 2d DCA 1998). These cases have sometimes further explained that an issue rejected on direct appeal may not simply be realleged as a claim of ineffective assistance of counsel. See, e.g., *Freeman v. State*, 761 So.2d

1055, 1067 (Fla.2000); *Medina*, 573 So.2d at 295; *Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001). There are a few cases in which appellate courts have reversed a conviction or sentence on direct appeal based upon ineffective assistance of counsel. See, e.g., *Stewart v. State*, 420 So.2d 862 (Fla.1982); *Ross v. State*, 726 So.2d 317 (Fla. 2d DCA 1998); *Rios v. State*, 730 So.2d 831 (Fla. 3d DCA 1999); *Gordon v. State*, 469 So.2d 795 (Fla. 4th DCA 1985). Logic might therefore suggest that when such an issue is raised on direct appeal, a subsequent postconviction motion raising the same issue is barred.

The policies behind the above-cited cases are designed to assure that direct appeal issues are considered only once, and matters that require inquiry beyond the face of the record are reviewed in a forum that is equipped to conduct the additional evidentiary inquiry. For example, a defendant may raise on direct appeal the issue of whether the trial court erred when it denied a motion for new trial. Because that issue may be raised on direct appeal, it may not be raised later in a motion under rule 3.850. Likewise, the defendant may not raise the same issue again merely by recasting it as a claim for ineffective assistance of counsel. Thus, in this hypothetical, the defendant could not argue in a postconviction motion that his lawyer was ineffective because the trial court denied the motion for new trial. In that situation, the postconviction allegation is simply adding the words "ineffective assistance of counsel" without adding any new facts or legal arguments.

On the other hand, the fact that a defendant unsuccessfully raised the denial of his motion for new trial on direct appeal would not bar a claim that his counsel was ineffective because counsel filed an untimely motion for new trial or because counsel omitted a critical ground when drafting and arguing that motion. In such a situation, unlike the previous hypothetical, the postconviction motion is not merely repeating the issue raised on direct appeal. Instead, it is raising a separate issue that is somewhat interrelated with the issue raised on direct appeal.

In such a case, the defendant often needs to allege and explain that his appellate counsel was unsuccessful on an issue during the direct appeal because his trial counsel was ineffective during the presentation of that issue in the trial court.

Briefs that successfully raise ineffective assistance of counsel on direct appeal are very uncommon. The general rule is that a claim of ineffective assistance of counsel may not be raised on direct appeal. See, e.g., *Bruno v. State*, 807 So.2d 55 (Fla.2001); *Jassan v. State*, 749 So.2d 511, 512 (Fla. 2d DCA 1999); *Caison v. State*, 695 So.2d 872, 872 (Fla. 3d DCA 1997). On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable. See, e.g., *Stewart v. State*, 420 So.2d 862 (Fla.1982); *Ross*, 726 So.2d at 318. For example, failure to move for a judgment of acquittal when the State has not proved an essential element of its case, when it is clear that the State could not reopen its case to prove that essential element, amounts to ineffective assistance of counsel that may sometimes be adequately assessed from the record on direct appeal.

Because of the strict rules limiting claims for ineffective assistance of counsel on direct appeal, the appellate courts typically reject the issue as both premature and requiring evidence beyond the appellate record. Accordingly, unless a direct appeal is

23

affirmed with a written opinion that expressly addresses the issue of ineffective assistance of counsel, an affirmance on direct appeal should rarely, if ever, be treated as a procedural bar to a claim for ineffective assistance of counsel on a postconviction motion. See *Bruno*, 807 So.2d at 64-65; *Kampff v. State*, 443 So.2d 401, 402 (Fla. 4th DCA 1984).

We conclude that the trial court improperly denied Mr. Corzo's postconviction motion on the ground that the ineffective assistance of counsel issue was raised on direct appeal. Mr. Corzo's postconviction motion is facially sufficient. On remand, the trial court should conduct an evidentiary hearing before it resolves the claim of ineffective assistance of counsel."

*Id*. at 644-645.

Applying *Corzo* to the instant case, the key question is whether Appellant raised the same issue that he raised on direct appeal in his 3.850. The record clearly shows that he did not. The direct appeal issue concerned whether the trial court erred in denying his motion for judgment of acquittal (R.289-290). The issue on 3.850 concerned counsel's failure to properly argue for a judgment of acquittal. The *Corzo* court noted that ineffective assistance of counsel claims are rarely cognizable on direct appeal. However, Appellant did not raise ineffective assistance of counsel on direct appeal. The two claims are fully distinguishable and different.

Given the foregoing, the trial court's record attachments do not conclusively refute the first half of claim two.

As to the second half of ground two, the trial court's reasoning misses the point of Appellant's claim. Simple logic shows that an abandonment theory is not inconsistent with a trial strategy that the Appellant never attempted to take a motorcycle. Thus, the trial court's record attachments do not conclusively refute the second half of claim two. This Court should reverse and remand with directions for the lower tribunal to either hold an evidentiary hearing on ground two or attach further record documents refuting Appellant's allegations.

Upon making the above mention argument the district court upheld the trial courts decision with an expressed per curium affirmed. In the instant case the state courts decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

Under 28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the,"unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the instant case, the state court identified the correct governing legal principal from the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this honorable court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.


Exhaustion of ground two in the state courts:

(1) Did you raise ground one in the appropriate Florida District Court of Appeals on a direct appeal of your conviction? Yes (  )     No ( ✓ )

(2) After your conviction did you raise ground one in the state circuit court that sentenced you by filing a Florida Rule 3.850 Motion to Vacate, Set Aside, or Correct Sentence?

Yes ( ✓ )     No (  )

(a) If your answer is "yes", then state:

i. Whether you received an evidentiary hearing __No_____

ii. The result _____Denied_____

iii. The date of the result __August 20, 2014_____

(b) If your Rule 3.850 Motion was denied, then did you file an appeal of that denial with the appropriate Florida District Court of Appeals?     Yes ( ✓ )     No (  )

i. If you failed to appeal the denial of our Rule 3.850 motion, then explain briefly, why you did not

_____N/A_____

(3)     Have you raised ground one in any other petition, application, or motion filed in the state courts of Florida?   Yes ( )         No ( ✓ )

If your answer is yes, then give the details, including the grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion

N/A

4.     Other than a direct appeal and other than the post-conviction motions disclosed in your answer to question 3 above regarding exhaustion of state remedies, have you previously filed any petitions, applications, or motions with respect to this judgment and conviction in any court, state or federal? Yes ( )     No ( ✓ )

5.     If your answer to 4 was "yes", give the following information:

(a)     (1)     Name of court _____ N/A _____

(2)     Nature of proceeding _____ N/A _____

(3)     Grounds raised _____ N/A _____

(4)     Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )   No ( )

(5)     Result _____ N/A _____

(6)     Date of result _____ N/A _____

(b)     As to any second petition, application or motion give the same information:

(1)     Name of court _____ N/A _____

(2)     Nature of proceeding _____ N/A _____

(3)     Grounds raised _____ N/A _____

(4)     Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )   No ( )

(5)     Result _____ N/A _____

(6)     Date of result _____ N/A _____

(c)   Did you appeal to the highest court having jurisdiction the result of any action taken on any petition, application or motion:

(1)   First petition, etc.   Yes ( ✓ )   No (   )

(2)   Second petition, etc. Yes (   )   No (   )

(d)   If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N/A

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?  Yes (   )   No ( ✓ )

**Ground Three:**   DEPRIVATION OF RIGHTS AS SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO ADVISE THE DEFENDANT OF THE EXISTENCE OF A POTENTAIL (PRR) SENTENCE WHICH CAUSED THE DEFENDANT TO REJECT A PLEA OFFER OF THREE YEARS.

**Supporting FACTS** (tell your story *briefly* without citing cases or law):   Petitioner, within his motion for post-conviction relief filed in the Ninth Judicial Circuit, Orange County, Florida, alleged that:

Defendant was charged by information with one count of attempted carjacking in violation of F.S. 812.13 , one count of Criminal mischief in violation of F.S.806.13(1)(b)(2) and one count of Robbery in violation of F.S.812.13.The events given rise to these charges occurred on or about September 14, 2008 in Orange County ,Florida

Trial counsel conveyed the States plea of 3 years Department of Corrections. At this time, counsel never advised the Defendant of a penitential (PRR) sentence causing him to reject the plea offer of 3 years. In fact, Defendant did not become aware that he could be sentenced under (PRR) until he was actually sentenced. Trial counsel advised Defendant that the he qualified for PRR sentencing, the he

27

would have accepted the State's plea offer (3) three years, which would have resulted in a lesser sentence. Therefore, counsel was ineffective.

Because plea discussions are usually held without the accused being present, the lawyer has the duty to communicate fully to the client the substance of the discussions. It is important that the accused be informed both of the existence and the content of the proposals made by the Prosecutor; the accused, not the lawyer, has the right to decide whether to accept or reject a prosecutor's proposal, even when the proposal is one the lawyer would not approve.

For the purposes of establishing ineffective assistance of counsel based on the rejection of a plea offer, the prejudice to the Defendant that Strickland, supra requires is inherent in the Defendant's ability to make an informed decision concerning whether to accept the plea offer.

When examining whether trial counsel was ineffective in the instant case where a plea agreement has been offered by the State the Supreme Court set out a three part test. The Court held that a prima facia case of ineffective of assistance of counsel based on the rejection of a plea offer would be made if a defendant proved (1) counsel failed to communicate a plea offer or misinformed the defendant concerning the possible sentence that he faced, (2) the defendant would have accepted the plea offer but for the inadequate communication; (3) acceptance of the plea offer would have resulted in a lesser sentence.

According to the rule 3.171(c) (2) (b) of the Fla. R.Crim., defense counsel shall advise a defendant of all pertinent matters bearings on the choice of which plea to enter and the particulars attendant upon each plea and the likely results thereof, as well as any possible alternatives that may be open to the defendant so that the defendant can make a informed and knowing decision to reject or accept a plea offer.

Pursuant to rule 4-.4(b) of the rules regulating the Florida Bar, Duty to explain matters to client, a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Due to trial counsel's deficient performance in failing to advise the Defendant of the existence of a potential (PRR) sentence, he was unable to make an informed and knowing decision concerning whether to accept the plea offer. The defendant rejected the States plea offer of (3) three years and ended up receiving (15) fifthteen year mandatory sentence making the defendant's choice to reject the States plea offer involuntarily made.

If not for counsel's deficient performance in failing to advise defendant of the existence of a potential (PRR) sentence the defendant would have been able to make an informed decision to accept the plea offer, the defendant would have accepted the States (3) three year plea offer, resulting in him receiving a lesser sentence. Therefore, the defendant is entitled to receive his original plea offer.

Upon making the above-mentioned argument, the trial court held an evidentiary hearing and after conducting the hearing, the trial court denied the instant claim:

In its order, the trial court argued:

In claim four of his amended motion, Defendant alleges ineffective assistant of counsel for failing to advise defendant of the existence of a potential prison Releasee Reoffender sentence, which caused him to reject a plea offer of three (3) years in the Department of corrections. At the hearing barker, testified Defendant did not want to entertain any offers because he was under the belief that the victim would not show up at trial. Barker believed the victims would appear at trial because they appeared at depositions and he explained this to defendant. Barker testified that former Assistant State Attorney, Esther Whitehead extended a three-year prison offer at the beginning of the case. This testimony was confirmed through e-mail exchanged on February 24, 2009, between Whitehead and Barker referencing the plea offer and that Defendant was hesitant to accept any offer because he did not want to go back to prison. These e-mails were entered into evidence at the evidentiary hearing. This offer was declined.

Subsequently, Assistants State Attorney Bradford Fisher took over the case, extended a five-year offer to the Defendant, and told barker he would seek PRR enhanced sentencing if Defendant chose to go to trial. Barker testified that once he was on notice of possible enhanced sentencing, he spoke with defendant and explained that if he lost at trial, the judge would be required to sentence him to fifteen years in DOC, which would have been served day for day. At the hearing, Assistant State Attorney Bradford Fisher testified that when assigned to the case he reviewed the facts, determined defendant qualified as a PRR, and amended the amended the Information adding a count. Additionally, Fisher advised that he contacted Barker explaining to him the possibility of Enhancement sentencing. Fisher advised Barker he would seek PRR sentencing only if the defendant chose to go to trial, and that he was ordering the PRR paper work from the Department of Corrections. Fisher testified that on May 27, 2009 Defendant's case was called for trial and he placed the offer of five years prison, followed

by ten years probation on the record, and the court discussed the offer and sentencing possibilities with the defendant.

At the hearing, Defendant testified that had he known he qualified as PRR he would have accepted the three-year plea offer. Defendant testified that barker told him to accept the three-year offer as a gift and to think about it, but that Barker did not tell him that he qualified as PRR at the time of the three-year offer. However once he learned of the possible PRR enhanced sentencing, the three-year offer was no longer on the table. Defendant acknowledged he was advise approximately one month prior to trial that he qualified as a PRR, however he stated he was not sure that the state was going to try him as a PRR because the State had not processed the paperwork at that time. Defendant testified he was extended a second offer of five years in prison, followed by ten years probation, and the trial court discussed this offer with him and explained the PRR sentencing, and when the court inquired whether he wanted to discuss the offer with Barker, he responded, Give me a trial. (PC4-5) Defendant testified he did not want to make offers because there was enough evidence to take the case to trial and he was not sure that decision to make. Defendant testified that from May 27, 2009 until July 1, 2009 the day of trial, he never advised Barker or the trial court, that he wanted to enter a plea. This court finds defendant's testimony that he would have accepted the three-year offer had he known he was PRR is not credible. At the time the three-year offer was extended by former Assistant State Attorney Whitehead, the State had not indicated intent to seek PRR enhanced sentencing. It was not until Assistant State Attorney Fisher took over the case and told the trial court and Defendant at the May 27, 2009, that the defendant qualified as a prr and the State would seek enhanced sentencing if Defendant chose to go to trial. At the hearing, the offer was placed on the record, the maximum sentence was explained, and the state described exactly what it would do if the defendant chose to go to trial. Defendant was well aware of the enhanced penalties if convicted at rial, and the State would seek those penalties if convicted. (PC2-4)

Moreover, Defendant reason for rejecting the three-year offer is not credible. Once Defendant was aware he was a PRR, he still rejected a five-year plea offer, knowing the trial court would be required to sentence him to fifteen years day for day if he was convicted at trial. **See Young v. State 608 So.2d 111. 112-113 (Fla. 5th DCA 1992).** Based on the evidence presented at the evidentiary hearing, it is evident Defendant was not going to accept any offer's extended by the State because he either did not believe the victim would appear for trial, or he want to take his chances with the evidence.

Additionally, the State of Florida is not required to provide timely or written notice of its intent to seek PRR enhanced sentence. **Akers v. State, 890 So.2d 1257, 1259 (Fla. 5th DCA 2005).** Therefore, it makes no difference that the State did not place him on notice at the time the three- year plea was extended. Defendant was certainly aware he was PRR prior to deciding to go to trial or being sentenced. Defendant has failed to meet his burden, and therefore he is not entitled to any relief.

Upon the above, mention denial the petitioner Appealed the trial court decision to the fifth District Court of Appeals on Appeal the petitioner argued:

In ground four, Appellant alleged that at the time a 3-year plea offer was extended from the State, the Appellant had not been advised by his counsel of a potential Prison Releasee Reoffender ("PRR") sentence. Appellant stated that counsel's failure to advise him of his potential PRR status resulted in his rejection of the 3-year offer (R.121). The State conceded an evidentiary hearing on this claim (R.159) and the lower tribunal ordered a hearing (R.203).

At the hearing, Barker testified as follows regarding the plea during direct examination:

"Q: What did you advise Mr. Torres about PRR?

A: I advised him that, if he lost his trial, the Judge would have no option but to sentence him to the maximum, which is 15 years, he would have to serve day-for-day.

Q: When did you talk to him about that relative to the trial?

A: I believe – and I'll have to state that as a belief because I don't, again, have a specific recollection. I believe Mr. Torres and I talked about his possibilities of enhanced sentencing early on in the case. That was always one of the – the major things that was going on in this case, and things that we discussed when he received plea offers.

I am fairly certain that we also discussed it after a brief discussion with Judge Wattles, prior to one of the court hearings. I don't remember if it was at a pretrial conference or an another – maybe it was when we were going to try the case. But I was sick. I can't – I can't specifically remember.

Q: Do you have an independent recollection of discussing PRR consequences with Mr. Torres?

A: That, I – I have a specific recollection of talking to Mr. Torres several times about enhanced sentencing, including PRR, but I – but I don't have a specific recollection of, you know, the exact conversation.

Q: So are you saying that you definitely discussed PRR with him, but you don't recall the specific words you used – or what are you saying?

A: Yes. I have no doubt that I spoke with him about the consequences of PRR. But I can't tell you, like, I said this, and then he asked a question, and then I responded. I can't give you the – I – I don't have specific of a memory.

Q: You're confident that he understood if he was – were to be convicted at trial, that he would be sentenced to the maximum penalty?

A: Yes. One of our biggest arguments going into trial was that – I advised him very strongly that this was not a good trial case, and with – especially with the consequences that he was facing because of the enhanced sentencing.

Q: What was the plea offer in the case?

A: First offer was three years Department of Corrections.

Q: And what did you advise Mr. Torres about that plea offer?

A: I told him it was an offer he's – he – he needs to think about, and he'd do a lot worse if he lost at trial.

Q: That he would do 15 years or that he would just do worse?

A: That particular conversation, I don't know. But overall, he knew he was doing 15 years if he lost.

Q: So did you counsel him to accept the plea offer or you just informed him what it was?

A: Every time we talked about a plea offer, Mr. Torres was adamant that he was not going to take any offers because he believed that witnesses would not show up at his trial.

Q: When you relayed the three-year plea offer to Mr. Torres, had you informed him, at that time, that if he rejected the plea offer and was convicted at trial, he was PRR and he would get 15 years?

A: I believe so. That plea offer, the three years, came from Ms. Whitehead. That was the only time the three years was on the table. And my – again, my general recollection is that, we talked about enhanced sentencing possibilities from the very beginning. So that was always something that we were aware of.

Q: And are you saying that that is your general practice, or you recall that specifically in this case?

A: I remember talking to Mr. Torres about PRR, I – I believe, but I don't have a specific recollection. I couldn't say a hundred percent that I had that conversation with him from the very beginning. When I say the very beginning, I don't mean, like, from the very first office conference, but early-on in the case.

   Mr. Torres came in to see me frequently – or more frequently than – than other clients. I believe we had that conversation early-on, when the three-year offer was on the table, but I could not tell you that a hundred percent."

(EH.45-50).

   During cross-examination, Barker discussed a May 27, 2009, plea conference wherein the Appellant was informed that he was a PRR and rejected a 5-year offer, stating, and "Give me a trial." (EH.69-70). Barker further testified that he believed the Appellant was turning down the plea on the hope that the victim would not show up (EH.71). However, immediately prior to this, Barker conceded that he knew the victim was on probation at the time for multiple felonies, and thus the likelihood of his showing up at trial was near-certain (EH.70). On redirect, Barker clarified that the May 27, 2009, plea conference with the PRR notice and 5-year offer occurred after the discussion of the 3-year offer (EH.73).

   Assistant State Attorney, Esther Whitehead, testified that she offered the plea to Barker on February 23, 2009 (EH.103).

   The Appellant testified on direct examination as to the plea as follows:

"Q: Did your attorney tell you that there was a three-year plea offer in the case?

A: Yes. He placed a call. He called me. Yes. He told me that the prosecutor had an offer of 36 months, and that would – I should take that as a gift.

Q: Did he advise – did he tell you at the time of the offer or before that, you qualified for sentencing as a PRR offender?

A: No. He called me on a Wednesday. He told me to think about a – think about it on a Friday, but he never talked about the PRR – or never talked about the offer.

Q: Would, at the time of the offer, knowing that you qualified for PRR sentencing have affected your decision whether to accept or reject the offer?

A: Yes. Because if I had known about the PRR – PRR, what they were talking about, I then would have – I would have not then rejected the 36-month offer.

Q: At the time you learned about the PRR, was the three-year offer still available?

A: No."

(EH.112). On cross-examination, the Appellant admitted to being present on May 27, 2009, wherein the Appellant was told he qualified as PRR and was offered a plea deal of 5-years prison / 10-years probation that he rejected (EH.115-116). Appellant further admitted that between May 27, 2009, and his date of trial on July 1, 2009, that he never told his attorney that he wanted to enter a plea (EH.121).

At the second day of the evidentiary hearing on July 26, 2013, the Appellant testified that he didn't find out that the State could file PRR paperwork after the trial was over, and testified that he did not have an interpreter present at the May 27, 2009 hearing and thus did not understand what was being discussed as far as the PRR (EHC.24). The Appellant further testified that from what he understood that day, the PRR papers were not going to be filed (EHC.26, 28). Appellant further stated that he only found out the State was actually filing the PRR paperwork on his date of sentencing (EHC.30). Appellant also stated that at the May 27, 2009, time of the 5-year offer, the 3-year offer was no longer available (EHC.30-31).

Assistant State Attorney, Bradford Fisher, who took over for Esther Whitehead on May 27, 2009, stated that he added an additional count of robbery and filed PRR paperwork for the purpose of trapping the defense into accepting the 5-year deal (EHC.38). Fisher stated he filed PRR paperwork as soon as he was placed on the case (EHC.46). On cross-examination, Fisher said Barker had told him that he had talked to the Appellant about the PRR (EHC.48).

In its order denying Appellant's motion, the lower tribunal stated that Appellant's testimony that he would have accepted the 3-year offer have he known he was PRR-eligible was not credible:

"At the time the three year offer was extended by former Assistant State Attorney Whitehead, the State had not indicated intent to seek PRR enhanced sentencing. It was not until Assistant State Attorney Fisher took over the case and told the trial court and Defendant at the May 27, 2009, that Defendant qualified as a PRR and the State would seek enhanced sentencing if Defendant chose to go to trial. At that hearing, the offer was placed on the record, the maximum sentence was explained, and the State described exactly what it would do if the Defendant chose to go to trial. Defendant was well aware of the enhanced penalties if convicted at trial, and that the State would seek those penalties if convicted.

Moreover, Defendant's reason for rejecting the three-year offer is not credible. Once Defendant was aware he was a PRR, he still rejected a five-year plea offer, knowing the trial court would be required to sentence him to fifteen years day-for-day if he was convicted at trial. See **Young v. State,**

34

608 So.2d 111, 112-113 (Fla. 5th DCA 1992). Based on the evidence presented at the evidentiary hearing, it is evident Defendant was not going to accept any offers extended by the State because he either did not believe the victim would appear for trial, or he wanted to take his chances with the evidence.

Additionally, the State of Florida is not required to provide timely or written notice of its intent to seek PRR enhanced sentencing. Akers v. State, 890 So.2d 1257, 1259 (Fla. 5th DCA 2005). Therefore, it makes no difference that the State did not place him on notice at the time the three-year plea offer was extended. Defendant was certainly aware he was PRR prior to deciding to go to trial or being sentenced. Defendant has failed to meet his burden, and therefore, he is not entitled to relief."

(R.270-271).

The conclusions of the lower tribunal are not supported by competent substantial evidence. Appellant's original ground was that his counsel failed to inform him of his PRR eligibility during the pendency of the 3-year plea offer, and counsel's failure caused him to unintelligently reject the favorable offer. Whitehead testified that she extended the plea to the defense in February 2009. Barker testified at the hearing that he could not remember specifically when or what he explained or discussed with the Appellant in regards to his PRR eligibility and how it could affect his ultimate sentence in the event of a guilty verdict. Appellant testified that Barker never explained or discussed PRR with him when the 3-year offer was extended.

The lower tribunal relied on the Appellant's later rejection of a 5-year prison / 10-year probation offer on May 27, 2009, in spite of PRR discussions, as being indicative that the Appellant had no intention to accept a plea no matter what. However, the Appellant, whose primary language is Spanish and who listened to the evidentiary hearings through an interpreter, stated that he had no interpreter on May 27, 2009, and therefore, did not understand the implications of PRR.

The importance of the plea process cannot be understated. Plea bargaining is an essential component in the administration of justice. **Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In Missouri v. Frye, 132 S.Ct. 1399 (2012), The United States Supreme Court stated:**

"The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities

that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." Frye, at 1407. "[The] plea process is [a] critical stage in criminal adjudication and warrants same constitutional guarantee of effective assistance as trial proceedings" Cottle v. State, 733 So.2d 963 (Fla. 1999).

In Alcorn v. State, 121 So.3d 419 (Fla. 2013), the Florida Supreme Court clarified the extension of the Strickland test (as it relates to the prejudice prong) for ineffective assistance of counsel claims where counsel fails to convey a plea offer and the defendant proceeds to trial and ultimately ends up with a harsher sentence than acceptance of the plea would have rendered. Alcorn went to trial for various crimes, was found guilty, and was sentenced to a term of 30-years. Alcorn then filed a Rule 3.850 motion for postconviction relief alleging, in pertinent part, that his counsel failed to convey a 12-year plea offer. An evidentiary hearing was held, in which Alcorn's counsel testified he had no recollection as to conveying the plea to Alcorn. Nonetheless, the trial court denied Alcorn's Rule 3.850 motion. Alcorn appealed to the Fourth District Court of Appeal and the denial was affirmed.

On review, the Florida Supreme Court quashed the Fourth DCA's decision and ordered the case back to the trial court in with instructions that trial court apply the four-part test as set forth in Frye and Lafler v. Cooper, 132 S.Ct. 1376 (2012), which stated in pertinent part:

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it, and if that right is denied, prejudice can be shown, under the prejudice prong of the Strickland test for ineffective assistance of counsel, if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence."(Emphasis Added). Id.

Similar to Alcorn, Barker had no firm recollection as to what he discussed regarding the PRR or when he discussed it. The evidence adduced at the hearing indicates that the Appellant was not informed of his PRR eligibility when the 3-year plea was offered in February 2009. This conclusion is not undermined by the Appellant's later rejection of the 5-year offer given the circumstances where Appellant was operating without an interpreter.

"Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" Lafler, at 1388-1389 (citing United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Therefore, the remedy to such a violation must "'neutralize the taint' of a constitutional violation ... while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the

State properly invested in the criminal prosecution." Id. at 1389 (citations omitted). "The correct remedy in these circumstances ... is to order the State to reoffer the plea agreement." Id. at 1391.

In sum, the lower tribunal's conclusion is not supported by competent substantial evidence, and this Court should reverse and remand for further proceedings with directions to order the State to re-offer the 3-year plea deal.

Upon making the above mention argument, the District Court upheld the trial court decision with an expressed per curium affirmed. In the instant case the state courts decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.


Under 28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication.

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the ,"unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the instant case, the state court identified the correct governing legal principal from the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this honorable court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.


Exhaustion of ground Three in the state courts:

(1)    Did you raise ground one in the appropriate Florida District Court of Appeals on a direct appeal of your conviction? Yes ( )    No ( ✓ )

(2)    After your conviction did you raise ground one in the state circuit court that sentenced you by filing a Florida Rule 3.850 Motion to Vacate, Set Aside, or Correct Sentence?

Yes ( ✓ )    No ( )

(a)    If your answer is "yes", then state:

i.    Whether you received an evidentiary hearing ___No_____

ii.    The result _____Denied_____

iii.    The date of the result __August 20, 2014_____

(b)    If your Rule 3.850 Motion was denied, then did you file an appeal of that denial with the appropriate Florida District Court of Appeals?    Yes ( ✓ )    No ( )

i.    If you failed to appeal the denial of our Rule 3.850 motion, then explain briefly, why you did not

_____N/A_____

(3)    Have you raised ground one in any other petition, application, or motion filed in the state courts of Florida?    Yes ( )    No ( ✓ )

If your answer is yes, then give the details, including the grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion

_____

_____

4.    Other than a direct appeal and other than the post-conviction motions disclosed in your answer to question 3 above regarding exhaustion of state remedies, have you previously filed any petitions, applications, or motions with respect to this judgment and conviction in any court, state or federal? Yes ( )    No ( ✓ )

5.    If your answer to 4 was "yes", give the following information:

(a)    (1)    Name of court _____N/A_____

(2)    Nature of proceeding _____N/A_____

(3)    Grounds raised _____N/A_____

_____

(4)    Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )    No ( )

38

(5) Result _____ N/A _____

(6) Date of result _____ N/A _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____ N/A _____

(2) Nature of proceeding _____ N/A _____

(3) Grounds raised _____ N/A _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )    No ( )

(5) Result _____ N/A _____

(6) Date of result _____ N/A _____

(c) Did you appeal to the highest court having jurisdiction the result of any action taken on any petition, application or motion:

(1) First petition, etc.    Yes ( ✓ )   No ( )

(2) Second petition, etc. Yes ( )    No ( )

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A _____

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?  Yes ( )   No ( ✓ )

**Ground Four:** Deprivation of rights as secured by the Sixth and Fourteenth Amendments to the United States Constitution through ineffective assistance of counsel by counsel's failure to object to improper closing argument and move for mistrial based on the improper closing argument.

**Supporting FACTS** (tell your story *briefly* without citing cases or law):   Petitioner, within his motion for post-conviction relief filed in the Ninth Judicial Circuit, Orange County, Florida, alleged that:

   Trial counsel render ineffective assistance by failing to object to improper prosecutorial arguments made during closing argument which could not be reasonably inferred from the evidence, bolster creditability of the State's witnesses, obscured the trier of facts  view with personal opinion, emotion and non-record evidence, misstated facts that were in evidence, or stated facts that were not in evidence. Failure to object to improper prosecutorial argument is cognizable in Rule 3.850 motion See. Eure v State 765 So.2d 789 (Fla. 2nd DCA 2000).
   A criminal trial is a neutral arena wherein both sides placed evidence for the trier of fact's consideration, and the role of closing argument is assist the trier of fact in analyzing the evidence, and not to obscure their view with personal opinion emotion and non-record See Ruiz v State, 743 So.2d 1 (Fla. 1999). It is well settle law that prosecutors must confine closing arguments to evidence in the and must refrained from comments that could not be reasonably inferred from the evidence See Ford v State 702 So.2d 279 (Fla. 4th DCA 1997). IT is improper to bolster the credibility of the state's witnesses. See. Marquard v. State 641 So.2d 54(1994) Counsel should not misstated facts that were in evidence or state facts that were not in evidence. Counsel should not inject his personal opinion, if so, it is reversible error. See Fenter v. State 944 So.2d 477 (Fla.4th DCA2006)
   Defendant was tried for attempted carjacking Robbery, Criminal mischief and battery. The State's Theory was that the defendant did some act towards committing the carjacking that went beyond just thinking or talking about it. However the victim and only other witnesses to the allege car jacking testified they never saw the defendant attempt to move the motorcycle before they left the scene.(T25,44).Moreover, the state failed to produce any testimony that the defendant would have committed the crime except that somebody or circumstance prevented him from doing so. In other

words, the state entered no evidence whatsoever that the defendant would have committed the crime except that somebody or something prevented him from committing the crime of he failed.

Contrary to the States theory, the defense admitted to committing a battery, but argued strenuously in closing that the state did not prove that the defendant tried to take the motorcycle. (T80) If the defendant wants to take the motor cycle, he had the keys and there was someone else to drive his car. It is not difficult to just start the bike and drive away. Fighting is not carjacking. (T81) In fact, Mr. Quick, the only witness other than the victim testified that the defendant was yelling at the victim "that's my bike", while he was hitting him. (T.44)

 It should be noted that to find the defendant guilty of attempted car jacking the State was required to prove that the defendant did some act towards committing the carjacking that went beyond just thinking or talking about it. More over, a review of the record clearly shows that this came down to the facts in the evidence, credibility, and argument as to whether the defendant was guilty or innocence of attempted carjacking. In other words, it was a questionable as to whether the state proved the allegations in the information.


Notwithstanding, the State in closing argument advised the jury that:

"He would have committed the crime except that somebody prevented him from committing the crime or he failed. And as you heard, as he's out there trying to get the bike, trying to get the keys, people start stopping. There was a traffic jam. You heard the truck driver and the passenger were running up, trying to stop what was going on. And he fled before he was able to finish committing the crime. (T.69, 70)

 A review of Mr. Quick's testimony or any other testimony failed to show, imply, or even tend to support that the defendant was prevented from committing the crime of carjacking, or that he fled before being able to finish committing the carjacking, because of people stopping traffic jams, or a tow truck driver and passenger running up". More over, Trial counsel failed to object to the improper comment and move for a mistrial.

 Defendant avers that trial counsel failure to object to this improper comment, which would not be reasonable inferred from the evidence, misstated facts in the evidence, or stated facts that were not in evidence constituted deficient performance. Counsel is charged with the knowledge of the law, and knew that no evidence was entered to support this inference based on counsel's closing argument.

Thus, counsel should have objected upon the State's failure to enter evidence to support this argument.

Counsel deficient performance prejudice the defendant by allowing the jury to hear facts not in evidence, allow counsel to misstate facts in evidence, or allow the state attorney's inference of what he thought to be forced upon the jury, without corrective instruction at the very least. Defendant's trial came down to credibility, and how the facts were perceived. Counsel failure to object to this improper comment allowed the jury to consider a theory of carjacking not entered or supported the evidence. In the totality of the circumstances the case came down to proof, or lack thereof, and this statement could not be deemed harmless. Had counsel objected to this improper comment, and either moved for a mistrial, or obtained a curative instruction the jury would have relied on the facts of the evidence, and/or not decided the verdict based upon this comment the result of the proceeding would have been different. Defendant avers that based on counsel failure to object to improper argument and have the jury instructed that no evidence exist to infer this set of facts, the defendant would not have been found guilty.

Defendant then alleged that he had stated a facially sufficient claim, thus an evidentiary hearing should be held.

The court summarily denied the above-mentioned claim in its order the court stated that:

In claim five of his amended motion, Defendant alleges ineffective assist of counsel for failing to object to the States improper closing argument and for failing to move for a mistrial on this basis. This claim lacks merit.

Defendant complains that the state's closing argument misstated the facts and made improper comments, which could not be reasonably inferred from the evidence. The inferences made by the state in closing argument were reasonable and inferred from the evidence. Defendant's allegations relating to the state's closing argument do not constitute error or prejudice. (TT 66-79, 87-90). There was no reason for counsel to object or move for mistrial based on the states closing arguments. Counsel can not be deemed ineffective for failing to make a meritless argument. **Maharaj v. State, 778 So.2d 944(Fla. 2000); Ridel v. State, 990 So.2d 581 (Fla. 3rd DCA 2008).** Additionally, as the state points out in its response, the defendant's case was reviewed on direct appeal for fundamental

error or argument that would have been so egregious it would have changed the verdict. Nothing in the State's closing argument appears to constitute error or prejudice. Accordingly, Defendant is not entitled to any relief.

Petitioner appealed the above mention decision to the Fifth District Court of Appeal. On appeal, the petitioner argued:

In ground five, Appellant alleged ineffective assistance of counsel due to counsel's failure to object to improper closing arguments and move for mistrial (R.124). The specific portion of the closing argument reads as follows:

> "... He would have committed the crime except that somebody prevented him from committing the crime or he failed. And as you heard, as he's out there trying to get the bike, trying to get the keys, people started stopping, there was a traffic jam, you heard that a tow truck driver and the passenger were running up, trying to stop what was going on. And he fled before he was able to finish committing the crime."

(R.125-126). The error in counsel's failure to object was explained as follows:

> "A review of Mr. Quick's testimony, or any other testimony failed to show, imply or even tend to support that the Defendant was prevented from committing the crime of a carjacking, or that he fled before being able to finish committing the crime of a carjacking, or that he fled before being able to finish committing the carjacking, because of 'people stopping, traffic jams, or a tow truck driver and passenger running up...' Moreover, trial counsel failed to object to the improper comment and move for a mistrial.
> 
> Defendant avers that trial counsel's failure to object to this improper comment, which could not be reasonably inferred from the evidence, misstated facts in evidence, or stated facts that were not in evidence constituted deficient performance. Counsel is charged with the knowledge of the law, and knew that no evidence was entered to support this inference based on counsel's closing argument. Thus, counsel should have objected upon the State's failure to enter evidence to support this argument.
> 
> Counsel's deficiency prejudiced the defendant by allowing the jury to hear facts not in evidence, allow counsel to misstate facts in evidence, or allow the state attorney's inference of what he thought the evidence to be forced upon the jury, without a corrective instruction at the very least. Defendant's trial came down to credibility, believability, and how the facts should be perceived. Counsel's failure to object to this improper comment allowed the jury to consider a theory of carjacking not entered or supported by the evidence. In the totality of the circumstances the case came down to proof, or lack thereof, and this statement could not be deemed harmless."

(R.126).

The trial court summarily denied ground five stating as follows:

"Defendant complains that the State's closing argument misstated the facts and made improper comments which could not be reasonably inferred from the evidence. The inferences made by the State in closing arguments were reasonable and inferred from the evidence. Defendant's allegations relating to the State's closing argument do not constitute error or prejudice. ... There was no reason for counsel to object or move for a mistrial based on the State's closing arguments. Counsel cannot be deemed ineffective for failing to make a meritless argument. *Maharaj v. State*, 778 So.2d 944 (Fla.2000); *Ridel v. State*, 990 So.2d 581 (Fla. 3d DCA 2008). Additionally, as the State points out in its response, the Defendant's case was reviewed on appeal for fundamental error or argument that would have been so egregious it would have changed the verdict. Nothing in the State's closing argument appears to constitute error or prejudice. Accordingly, the Defendant is not entitled to any relief."

(R.272).

The record attachments do not conclusively refute the Appellant's allegations. The Appellant's initial brief from his direct appeal was attached as an exhibit (R.287-290). The two issues on direct appeal were trial court error in limiting cross-examination, and trial court error in denying a motion for judgment of acquittal. As clearly shown, the Appellant's case was not reviewed on appeal for fundamental error in closing arguments; therefore, the issue is not precluded from attack via postconviction.

Further, the trial court attached no testimony of Mr. Quick, the witness that the State referred to that was allegedly running up and trying to stop the carjacking, to refute the Appellant's allegations that the State misrepresented the facts during closing arguments. Therefore, the trial court's record attachments do not conclusively refute the Appellant's allegations. This Court should reverse the lower tribunal's summary denial of ground five with directions to either hold an evidentiary hearing or attach further record documents refuting the Appellant's allegations.

Upon making the above mention argument the district court upheld the trial courts decision with an expressed per curium affirmed. In the instant case the state courts decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

Under 28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

   For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the, "unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

   In the instant case, the state court identified the correct governing legal principal from the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this honorable court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.

**Ground Five:** DEPRIVATION OF RIGHTS AS SECURED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION THROUGH THE TRIAL COURT ERRED BY LIMITING APPELLANT'S CROSS-EXAMINATION OF HIS ACCUSER AND THE PRIMARY WITNESS AGAINST HIM.

**Supporting FACTS** (tell your story *briefly* without citing cases or law):   On Direct Appeal in the Fifth District Court of Appeal the Petitioner through undersign counsel argued that:

   In all criminal prosecutions, the accused... shall have the right... to confront at trial adverse witness, to be heard in person. By counsel or both, and to have a speedy and public trial by impartial jury in the county where the crime was committed Art. I Statute 16(a), Fla. Constitution Amends VI and Xiv, U.S. Const.

Cross-examination is at once an important incentive for, and the adversary system great engine for testing for, truthful testimony. Eschewing the rack and screw, we count on cross-examination after direct examination or, where redirect examination yield new matter, recross-examination after redirect examination, to ferret out the truth from any and all witnesses, and gain a fuller understanding of the import of their testimony. **See Sanders v State 707 so.2d 664, 667(Fla. 1998).** Limiting cross-examination in a manner that precludes relevant and important fast bearing on the trustworthiness of the testimony constitutes error, especially when the cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested, Davis v. Alaska, 415 U.S. 308.316 (1974), **Bordelon v. State. 908so.2d543, 545-546 (1st DCA 2005)** Emphasis supplied) Pending charges against a prosecution witness are relevant to show bias, motive or self-interest. **Torres-Arboledo v. State 524 so.2d 403(Fla. 1988).**

Hector Nieves was the complainant in this case, accusing his brother in law Appellant Hector Torres, of trying to steal his motorcycle. (R19) The motorcycle was titled in the name of Mr. Nieves mother who had purchased it from Appellant's wife. (T.17.18, 51-53) During the struggle for the keys to the ignition, Appellant asserted that it was his motorcycle. See e.g. Rodriguez v. State, 396 So.2d 798 ( Fla. 3d DCA 1981)( a well found belief in one's right to posses property constitutes a complete defense to a charge of theft.(R 26,44)

At the time of this trial, Hector Nieves was awaiting sentencing for four felonies. (T35) He had been previously convicted of two felonies. (T 35). Appellant lawyer was allowed to elicit this facts, but judge wattles would not would not prompt him to bring the facts that (1) Hector Nieves's pending charges carried a potential sentence of 165 years and (2) he was at the time of the offense on probation and getting into a fight, that is, committing a battery, would constitute a violation. See e.g., Rule 3.986(e) 3(5) (not violating the law is a standard condition of probation).

MR. BARKER [Defense counsel]: All that is left is sentencing. And he's hoping that the State will agree to give him a lenient sentence that part of his plea agreement is that, um—part of the agreement—one of the things that allows for you to get a more lenient sentence is to testify against people who the state is prosecuting.

MS. DEYOUNG [Prosecutor]: I would like to object to that last question. One we don't know for sure, because nobody's actually seen the substantial assistance agreement. And two, that's very obvious to .

THE COURT: Has any –as an officer of the court, are you – can you represent on the record whether any offer has been made to testify in this case?

MS. DEYOUNG: There's been absolute no offer in the case whatsoever. And I'm not aware of what's going on in the other case at all. first i heard of it was this morning when Mr. Barker brought it up.

THE COURT: I will not allow you to ask that – the last question. And I will not allow you to ask the question about 165 years.

MR. BARKER: Okay. Well, I need to proffer this.

THE COURT: Huh?

MR. BARKER: I need to proffer – it—it goes to his bias, what he's hoping to get.

THE COURT: No – it's on the record. Tammy's getting it.

MR. BARKER: Okay. It goes to his bias and what he's hoping for. It's his perception, not what the agreement –not – not what Miss DeYoung is gonna do for him—

THE COURT: But we're allowing you to explore that very adequate by going into a number or prior cases and number of counts that are pending and the fact he's already pled, he's awaiting sentencing. I don't think it's relevant as to the number of years. To a jury's perspective, the word felony is—you know, it implies that it's serious. So I wouldn't – would not allow those twp parts of the questions you want to asks, about 165 years, and the last part about the testifying against people. That could be –

MR. BARKER: What about the minimum sentence? He has a 15 minimum mandatory, as well as three, three year minimums.

THE COURT: No. Stay away from any sentencing. You can say six counts or six charges, that fine, but not what sentencing might be. They're felonies. You can argue in your closing, hey, felonies are serious matters or something like that. But still stay away from the actual sentencing exposure.

MR. BARKER: Okay

(T31-34)

During further cross-examination, defense counsel requested to question Hector Nieves on his probationary status at time of the alleged offense:

MR. BARKER: Since he was on probation, I want to ask him that he was on probation at the time of this offense and getting into a fight would, in his perspective, be a violation of that probation.

MS. DEYOUNG: No

THE COURT: It's not relevant.

MR.BARKER: Okay

(In open court)

MR. BARKER: NO further Questions, Your Honor

THE COURT: All Right.

(T36)

Defense counsel contentions – that it was Hector Nieve's perception and hope regarding his pending charges that counted and not necessarily the concereye promise from the prosecute, that matter – is well founded. In **Williams v. State 912 So.2d 66 ( Fla. 4th DCA 2005 )**, the trial court allowed defense counsel to question the allege victim in a physical alteration but the judge reversibly erred by preventing the defense from asking the complainant whether he knew that his existing bond would have been revoked had he been arrested for the incident, and by limiting defense counsel closing argument that the complainant had fabricated his story in order to avoid getting in further trouble on top of his existing charges. The District Court observed:

A well- recognized way that a defendant may raise a reasonable doubt is to argue that pending criminal charges have influenced a witness's cooperation with the State. **See Blanco v. State 353 So.2d 602,604 (Fla. 3d DCA 1977).** To explore more subtle motivations, a defendant may cross-examine to bring out a witnesses hope to obtain favorable treatment from the State. For example, in **Watt v. State, 450 So.2d 265,268 (Fla. 2d DCA 1984),** the second district held that a key State witness on probation may properly be question about whether he "has a desire to testify so as to please the authorizes who have some discretion over his probationary status...." the trial court improperly foreclosed Williams's attorney from arguing a crucial aspect of the defense.

Id. 912 SO.2D AT 68. **See also Williams v. State 1So.3d 335, 336(Fla. 5th DCA 2009):**

The Trial Judge's contrary ruling seems to have been based upon a misimpression that the prosecution witness could only be impeached with questions about his pending criminal charge if he had already discussed the possibility of receiving favorable treatment in his case in exchange for his testimony at Williams's trial. The rule in not so limited.

The denial of confrontation calls into question the ultimate intimate of the fact finder process. Ohio v Roberts, 488 U.S. 56, 64 100 S.Ct 2531, 65 L.Ed.2d 597 (1980) (quoting Chambers v. Mississippi, 410 .S. 284,295(1973) abrogated on other grounds, Crawford v. Washington, 541 US. 36 (2004) Appellant should be granted a new trial. Art I 9 and 26 Fla. Const. Amend VI and Xiv, U.S. Const.

Upon making the above mention argument the District Court denied the above mentioned claim with a expressed per curium affirmed. In the instant case, the District Court's decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

Under 28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the,"unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the instant case, the State Courts identified the correct governing legal principal form the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this Honorable Court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.

Exhaustion of ground five in the state courts:

(1)  Did you raise ground one in the appropriate Florida District Court of Appeals on a direct appeal of your conviction?  Yes ( ✓ )        No ( )

(2)  After your conviction did you raise ground one in the state circuit court that sentenced you by filing a Florida Rule 3.850 Motion to Vacate, Set Aside, or Correct Sentence?

Yes ( )    No ( ✓ )

**Ground Six:**   DEPRIVATION OF RIGHTS AS SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH TRIAL COURTS ERROR IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL

**Supporting FACTS** (tell your story *briefly* without citing cases or law):   On Direct Appeal in the Fifth District Court of Appeal the Petitioner through undersign counsel argued that:

   Appellant Hector Torres was charged in count one of the amended information with attempted carjacking, or with trying to steal his brother in law Hector Nieves's motorcycle. (R38) In count four, he was charge with robbery, or trying to steal Hector Nieves helmet or keys (R40) He was also charged in count three and acquitted of, criminal mischief by damaging Mr. Nieve's helmet. (R.39)

   Mr. Nieve's had testified that after the incident was over his motorcycle helmet had been tossed from Appellant's car and damaged so that he could not longer use it.(T 25,26).

   The jury found the Appellant guilty as charged of attempted carjacking under count one and under count four charging robbery returning a verdict finding him guilty of the lesser included offense of petit theft. (R80 83). Mr. Nieves had testified that he never got his ignition key back (T26) Both Hector and Michael Quick, who was on the scene having his own vehicle towed, testified that they did not see either Appellant or co- defendant try to move the motorcycle.(25,44) The trial court should have granted Appellant motion JOA. Defense counsel argued:

MR.BARKER: [Defense Counsel], as far as attempted car jacking, both Mr. Quick and Mr. Nieves stated that they did not see anyone trying to actually, physically remove the motorcycle.

They didn't –the testimony was that per – first, Mr. Hector Nieves was knocked off the motorcycle or had gone off the motorcycle, and that there was a fight. There is some testimony in terms of him trying to take the key, but there was no testimony they either—either person especially Mr. Torres tried to physically take the motorcycle. It may have been a guess by Mr. Nieves, but, on his testimony, he said, no. I didn't see it, I was on the ground. When he was

specifically ask, did you see the gentleman try to take the motorcycle, he said no, he didn't see it. Mr. Quick said the same thing on his direct examination. [Sic].

THE COURT: Okay. Miss DeYoung, any response, just for the records, as attempted?

MS. DEYOUNG:[prosecutor] As to Count 1, attempted carjacking is the court gonna read to – it the court were to read the jury instruction it basically says, did some act that went beyond just thinking or talking about it in terms of the attempted taking of the vehicle. In this case, obviously, pulled him off – stopped in front of him. Um, started hitting him. I believe there was some testimony that once he got on the ground they tried to move it. I could be mistaken as to whether or not that was true or not. Biting his finger, trying to take the keys, screaming at him that's my bike, that's my bike, or give me my bike depending on which version you hear. So, I would argue that I have gone beyond just thinking or acting—or talking about it ,and I think it's a factual question at this point for the jury to decide whether or not that was sufficient in terms of going beyond what's necessary for the attempted taking.

Judge Wattles first took the motion under advisement and then later denied it:

THE COURT:

We would deny the motions for judgment of acquittal on the last three counts as previously stated.

As to Count 1, we would deny the motion for judgment of acquittal. And the Court reasoning on that, just for the record, is that whether or not the jury believes that the attempted to get the keys was an attempted to take the vehicle would be a jury determination of the case. I think the State's proven that by the testimony of Mr. Nieves that there was an attempt two get the keys out of his hand and the fingers were bit allegedly, in attempt, et cetra. And I think that that could go to a jury question, because it's not an element of robbery.

The robbery, apparently, is the helmet, although the state bootstraps it a bit with the key. So I would allow – I would deny the motion for judgment of acquittal as to count one carjacking. Recognizing that the jury could also easily find the Mr. Nieves—Mr. Torres not guilty of that count because there was and abandonment, but we'll let the jury decide.

(T 92-93)

The District Court in Flores v. tae, 855So.2d 566 (fla.3d DCA 2003), held that a judgment of Acquittal for the carjacking should have been granted where the defendant took the keys to the car in

a robbery and then took the car. Flores has been distinguished by other cases, including form the same District Court, because the force used in the takings of the keys and the vehicle in the later cases were not nearly as attenuated as in Flores. See e.g. Baptist-Jean v. State, (79 So.2d 1091 ( Fla. 3d DCA 2008), which found evidence of carjacking sufficient where the keys were forcibly taken directly from the victim's person and the car was stolen within the victim's presence. The issue in those cases was whether the stolen motor vehicle was forcibly taken and thus was the subject of a robbery or merely theft.

The decision from this case must be distinguished, however, involved whether the defendant was guilty of carjacking when the vehicle was not taken away from the victim. In **Price v.State, 816 So.2d 738 ( Fla. 3d DCA 2002) the District Court adopted the reasoning from the first DCA's reasoning in dicta within James v. State 745 So.2d 1141 ( Fla. 1st DCA 1999)( wherein the issue had not been preserved)** and concluded that taking a victim's car keys could satisfy the taking element of carjacking, even though the defendant never actually drove away in the victim's car and attempted but was unable to start it in order to drive away. The evidence in both Price and James, in other words demonstrated the defendant's intent and attempted, but failure to remove the vehicle from the scene.

The evidence in this case affirmatively demonstrated that Hector Torres did not attempt to take the motorcycle Hector Nieves had been riding, or that anything prevented him from doing so. According Hector Nieves, either Appellant or the person Mr. Nieves identified as Seppe had taken his keys during the struggle. He testified that they finally got the key out of my hand" and Appellant ended up with the keys. The jury found Appellant guilty of stealing either Hector Nieves helmet or keys and found him not guilty of the Damaging the helmet, which was recovered. (R 38-40, 80-83 T114)

Hector Nieves did not see either Appellant or Seppe try to move the motorcycle ( I was on the ground, I was –Didn't see none of that) nor did Michael Quick , who happen to be at the same scene and witnesses the incident.( r 26.44) Hector Nieves further testified that there were additional people in both appellant and Seppe cars, that is, potential drivers for either car, if either accused Carjacker indeed intent to take the motorcycle. The evidence presented by the State showed that Appellant did not have that intent.

The evidence was thus insufficient to sustain the charged crime and appellant's conviction for attempted carjacking must be vacated. Art. I 9 and 16 FLA. Const. Amend XIV U.S. Const.

Upon making the above mention argument the district court denied the above mentioned claim with a expressed per curium affirmed. In the instant case, the district court's decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

Under 28 U.S.C. § 2254(d), the court cannot grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless such adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For a challenge to a state court decision under § 2254(d) (1), the Supreme Court has clarified that the "contrary to" inquiry is different from the, "unreasonable application", inquiry. A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."

In the instant case, the state court identified the correct governing legal principal from the Supreme Court decision but unreasonably applies that principal to the facts of the Petitioner's case. Wherefore the petitioner, request that this honorable court hold an evidentiary hearing to address the matter or grant the petitioner habeas relief by ordering a new trial.

Exhaustion of ground six in the state courts:

(1) Did you raise ground one in the appropriate Florida District Court of Appeals on a direct appeal of your conviction? Yes ( )    No ( ✓ )

(2) After your conviction did you raise ground one in the state circuit court that sentenced you by filing a Florida Rule 3.850 Motion to Vacate, Set Aside, or Correct Sentence?

Yes ( ✓ )    No ( )

## UNEXHAUSTED CLAIMS

**Ground Seven:   DEPRIVATION OF RIGHTS AS SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO RESEARCH PREPARE, AND PROPERLY ARGUE THE JUDGMENT OF ACQUITTAL AFTER JURY VERDICT.**

**Supporting FACTS** (tell your story *briefly* without citing cases or law):

The Defendant rested without calling a single witness, closing arguments were advanced, and just prior to the jury instruction being read the trial court ruled on the JOA it had reserved with the following:

_____ So the record is clear... We would deny the motion for judgment of acquittal. And the court's reasoning on that, just for the record, is whether or not that the attempt to get the keys was an attempted to take the vehicle would be a jury determination of the case.  Think [sic] the State has proven by the testimony of Mr. Nieves, that these was and attempt to get the keys out of his hand...., and I think that could go to a jury question...Clearly, we don't have a car jacking. Recognizing that the jury could easily find... Mr. Torres not guilty of that count because there was and abandonment, but well let the jury decide. (92-39).

_____ The jury instructions for attempted Car Jacking states that, It  is  not  an  attempt  to  commit carjacking, if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission under the circumstances indicating a complete and voluntary renunciation of his criminal purpose.

_____ The Judge determined from the evidence present at trial that there was and abandonment of the allege crime. Pursuant to the jury instructions- an attempted carjacking did not take place- where there was and abandonment of the allege crime. Therefore, after the jury return a verdict of guilt, Counsel should have renewed the motion for judgment of acquittal and argued that it would be error for him to ignore the fact that there was and abandonment of the allege crime and not grant the defendant's JOA.

Counsel actions in failing to motion for post judgment JOA demonstrated a deficient performance that satisfies the first prong of Strickland v. Washington 104 S.Ct 2052 (1984) Counsel's deficient performance prejudice the defendant where if counsel had renewed the above mentioned motion and argued that the court had clearly expressed that there was an abandonment of the allege crime, the court would have been required the grant the defendant's JOA. Thus there's a reasonable probability that the outcome at trial would have been different, which satisfies the second prong of Strickland, supra.

The Petitioner contents that his claim was not raised in State Courts due to lack of postconviction counsel, him being, and undergraduate of law and procedures that govern postconviction proceedings. Being that the claim was not raised in state court; the Petitioner's claim is procedurally defaulted. Consequencely, the petitioner requests that this Honorable court review Petitioner's claim under the standard in Martinez v. Ryan 132 S.Ct 1309 (2012)

In Martinez, supra, the court held that:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546. There is no dispute that Arizona's procedural bar on successive petitions is an independent and adequate state ground. Thus, a federal court can hear Martinez's ineffective-assistance claim only if he can establish cause to excuse the procedural default.

Coleman held that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.' " **Maples v. Thomas, 565 U.S. ----, ----, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012).** Coleman reasoned, "Because the attorney is the prisoner's agent ... under 'well-settled

principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." Maples, supra, at 922, 132 S.Ct. at 922.

Coleman, however, did not present the occasion to apply this principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. The alleged failure of counsel in Coleman was on appeal from an initial-review collateral proceeding, and in that proceeding, the prisoner's claims had been addressed by the state habeas trial court. See 501 U.S., at 755, 111 S.Ct. 2546.

As Coleman recognized, this marks a key difference between initial-review collateral proceedings and other kinds of collateral proceedings. When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim. See, e.g., Fox Film Corp. v. Muller, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935);   Murdock v. Memphis, 20 Wall. 590, 22 L.Ed. 429 (1875); cf. Coleman, supra, at 730-731, 111 S.Ct. 2546.   And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.

In Florida, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, therefore the holding in Martinez, supra applies:

"[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S., at ----, 132 S.Ct, at 1320.

The petitioner has revised the above-mentioned claim. It is facially sufficient and relates back to the petitioners original claim raised in the state court. It is the petitioner's position that this claim demonstrates that his 6th and 14th Amendment rights guaranteed by U.S.C.A. were violated. If the petitioner would have had competent counsel to litigate the instant claim as it is now litigated, the petitioner's claim would not have been facially insufficient or procedurally defaulted and petitioner would have received the appropriate relief in the State Court. Therefore, if deemed appropriate by this Honorable Court, petitioner request that the instant claim be reviewed under Martinez, supra and if the petitioner has demonstrated merit for relief, conduct an evidentiary hearing to resolve the matter.

**TIME CRONOLOGY**

The Petitioner's Direct Appeal became final on November 2, 2010. The 90 days afforded to file certiorari ended on February 2, 2011. Petitioner time for filing his federal Habeas corpus did not began to run at this time because the Petitioner had filed an ineffective assistance of appellate counsel (Fla.App.P.Rule 9.141) motion on December 23, 2010 and it was not denied until February 23, 2011. This is when the Petitioner filing time began to run. The statute of limitations ran from February 23, 2011 until June 2, 2011 when Petitioner filed his Fla.R.Crim.P. Rule 3.850. (At this time, Petitioner had 266 days to file his federal Habeas corpus). The Ninth Judicial Circuit Court in and for Orange County granted an evidentiary hearing on the Petitioner's motion. The Petitioner's motion was denied on August 21 2014 after the evidentiary hearing. The petitioner Appealed the Circuit Courts decision to the Fifth District Court of Appeal and the District Court up held the circuit court's decision on September 8, 2015. This is when the Petitioner's filing time began to run. Consequently, Petitioner's habeas corpus has to be filed by May 23, 2016. Thus, the Petitioner's Habeas Corpus is timely filed.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?  Yes ( )   No ( ✓ )

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At the preliminary hearing _____ Public Defender: Robert M. Mack _____

(b) At arraignment and plea _____ Robert M. Mack _____

(c) At trial _____ Robert M. Mack _____

(d) At sentencing _____ same as (c) _____

(e) On appeal _____ Howard L. Dimming II, and Tim Bower Rodriguez _____

(f) In any post-conviction proceeding __ Pro se _____

(g) On appeal from any adverse ruling in post-conviction proceeding _____ Pro se _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes (✓) No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes ( ) No (✓)

(a) If so, give name and location of court, which imposed sentence to be served in the future:

_____

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment, which imposed the sentence to be served in the future? Yes ( ) No ( )

Wherefore, Petitioner prays that the Court GRANT Petitioner relief to which he may be entitled in this proceeding.

**I UNDERSTAND THAT ANY FALSE STATEMENT OR ANSWER TO ANY QUESTIONS IN THIS APPLICATION WILL SUBJECT ME TO THE PENALTIES OF PERJURY (A FINE OF $10,000 OR IMPRISONMENT FOR FIVE (5) YEARS, OR BOTH).**

I declare that under penalty of perjury that the foregoing is true and correct.

Executed on _3-2-16_
      Date

                                    Signature